All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its Honorable Court. Please be seated. Good afternoon ladies and gentlemen. As everyone knows we have one case today. 06-7242 Carlson v. Department of Veterans Affairs. This week we needed a shovel, but we ended up with a carpenter. We're happy to see you anyway. Mr. Carpenter, please proceed. Thank you, Your Honor. The court, please. Kenneth Carpenter on behalf of Mr. Carlson. I can begin my argument, Your Honor, by offering a concession to the court that in preparing for the argument I believe that I have discovered an overstatement or an incorrect statement, I probably should say, about what the standard of proof should be to rebut the presumption of service connection under 105A. I suggested in the briefs that it should be the standard of 1111. As I have prepared for this argument, I have now concluded that that is probably not correct because the narrowness of the issue in this case under 105A is merely a question of willfulness conduct. I believe it is then covered by the binding effect of the VA's recognition of 3.1M. As a consequence, I believe then the question of law that needs to be addressed by this court is comparable to the question addressed in the Thomas case about what the burden of proof is or the standard of proof required by the VA to rebut the presumption of service connection under 105A when, as here, there is a finding of line of duty determination and no willful misconduct by the service department. In the Thomas case, the question of willful misconduct came out without the benefit of such a service department finding. The question then becomes the interaction between the presumption that is afforded under 105A and the VA's own regulation, which says that the service department finding in that regard will be binding unless it is found to be patently inconsistent with the regulations of the Department of Veterans Affairs. And we do not believe that the veterans court Requirements of laws, which presumably would include statutes. That's correct. Right. And maybe also regulations, but certainly includes the statutes. Yes. Right. So what are you arguing for? Are you convincing evidence standard? Yes, Your Honor, because I believe that it has to be differentiated based upon the circumstances presented in Thomas where there was no service department finding. Clearly, the regulation does not speak to the standard and neither does the statute. And therefore, I believe that that would be the correct standard as opposed to trying to import the 1111 standard. Now, as I understand it, it was not until 1990 that the statute was amended, both statutes 105 and 1110, to include abuse of alcohol or drugs in addition to the willful misconduct language that was there before. That's correct. So wouldn't it be the case that a service determination of line of duty that was made before that, even if it was specifically adverting to willful misconduct, would not have had any reason to advert to the abuse of alcohol or drugs factor? Probably not as a general matter, Your Honor, except that in this case, that was the precise issue. Before 1990, was willful misconduct viewed as including drug abuse? I would suggest that it would have been, Your Honor. I don't know any reason why one would somehow determine that drug abuse, whether drug or alcohol, would not be considered willful misconduct. Well, somebody thought it wasn't at least explicit because it was specifically included in the 1990 legislation, right? That's correct. There was at least confusion on that score, I take it. Except that I think that that arose, as I understand the legislative history, based upon a perception by Congress that benefits were being awarded when in fact there was an injury or disease that was the result of alcohol abuse in particular. They added drug, I believe, to cover both sides of the equation. But the ultimate question in this case, it seems to me, is how or whether when the Veterans Court said that the Board had properly evaluated Mr. Carlson's claim under 105A, that is or isn't a correct determination when in fact the Veterans Court did not defer to the interpretation of 105A in the VA's regulation. And more importantly, the Board simply gave a conclusory statement that it was inconsistent. And clearly there has to be something more than that. We now know from Thomas that there at least has to be a preponderance of evidence. And a declaration that it is inconsistent certainly doesn't constitute a preponderance of evidence against the presumption that the disease or injury was incurred in service. Help me out with something else, and that is the interaction of 105A and 1110. There seems to be a logical glitch between the two. And maybe there isn't, but let me just run you by it. Maybe you know what I'm talking about. You have the reference in line of duty. You say you're knocked out of line of duty if you find willful misconduct or use of drugs. But then even if you have line of duty established, you come down to 1110 and you're knocked out of entitlement to benefits if you have use of drugs or willful misconduct. At minimum, they're making the same finding twice. But it also seems to me that to the extent that your argument on 3.1M may be carried the day for 105, I don't see how it necessarily carries the day for 1110. Well, and I think that becomes a question of whether or not we understand correctly the elements of a claim for compensation. And the elements of the claim for compensation that are addressed by 1110 are only the right to receive compensation. What was dealt with by this board decision and all of the successive board decisions from 1993 to the last one in 2004 was the question of the element of the claim of the right to a finding of service connection. Was this disease or injury incurred in service? Now, in fact, there may be a separate issue on the question of compensation. It's our position that once the line of duty determination has been made and it resolves the question of willful misconduct, that the VA cannot go back and revisit that question because they're bound by that determination under their own regulation in order to prevent an award. And what's even more important in this case is the very facts that caused this case to be reopened were the veteran's service records. And those service records specifically addressed the fact that at the time, in 1971 I believe it was, the military medical professionals concluded that it was reasonable to assume that the use of the drugs was to deal with the symptoms of the schizophrenia. What we have here factually is a case in which it's undisputed that this veteran came into service, had no problems for three years, in his fourth year of service had a psychological breakdown. And then the question merely became, and it's evident from the record, that the military grappled with this question. But once they resolved that question, that really should be the end of it, and under the benefit of the presumption of 105A, Mr. Carlson should not be required to come forward with evidence. The burden should shift to the government to come forward with evidence under their own regulation to demonstrate why it was patently inconsistent. We're suggesting that that burden should be a clear and convincing burden as opposed to the preponderance of evidence in Thomas simply because it negates the whole meaning of the regulation if you say that the service department standard is exactly the same as whether there is no service department standard. I wonder whether that's true. If I understand correctly, the service department determinations made as part of a separation exam would be directed in part to the question of whether there should be a disability retirement determination, right? Not entirely, Your Honor, as you'll see in part. In part, absolutely. And looking at the statutes, I'm wondering if for military disability purposes the line of duty may not have a different meaning than it does in the VA context. In this sense, that as I read the military disability statute, line of duty and willful misconduct are separate inquiries, whereas under the VA statutes that the willful misconduct issue is subsumed under the line of duty issue. Does that difference exist? I don't believe so, Your Honor. But even if it did, by Your Honor's characterization of it being subsumed, then it would seem to me that that would make it then dispositive. Well, except that then the service department determination of line of duty wouldn't encompass within it the question of willful misconduct. Except in this case it did. Well, I'm not so sure. Looking at that page 100, which I assume is what you're talking about, I'm not so sure that they didn't view them as separate issues. You see, we could have a situation in which the regulation by adopting the service determination of willful misconduct would be adopting the service determination of willful misconduct, which would mean that it occurred while in service, and wouldn't be speaking to the question of willful misconduct. Because line of duty has a different meaning for the service departments than it does for the VA. And I suppose if that were the case, Your Honor, then it would seem to me that that is precisely the type of doubt that should be resolved in the veteran's favor, and that the purpose of the deference that is afforded the VA's regulation should permit the veteran to benefit from that determination, unless the VA wants to say, well, that's not what we meant. Perhaps. But before getting there, am I on the right track or the wrong track when I look at this and I conclude that the service departments may have a different definition of line of duty, that is, it doesn't include a determination about willful misconduct, than does the VA? It has been my understanding that traditionally the VA has seen the military's determination of line of duty to be consistent with their own determination that includes the consideration of willful misconduct. Now, I have to concede that what you have observed, I think, is probably a fair question as to whether or not there isn't a difference between them. But that difference, in our view, Your Honor, should have been resolved by the VA, and their regulation simply doesn't address that. It speaks to it much more categorically. But in the regulations, and you've relied on 3.1M, which talks about line of duty, but 3.1N has specifically called out separately willful misconduct and has a similar, although slightly different, formula for when a service determination can be overturned. And to say then that willful misconduct is incorporated within the line of duty finding seems at odds with the notion that you have a separate regulation that deals with willful misconduct. How do you square those two? Well, I think you square them by comparison to the Thomas case. In Thomas, you didn't have a service department determination to defer to. And I have never seen anything from the VA that would suggest that the line of duty determination has that distinction, and there's nothing that I've found in the regulatory history that suggests that M was created because of this duality, if you will, in the regulation, and that what was being interpreted in 3.1M was the presumption relative to line of duty. And then, of course, the question becomes, let's assume then that you have the benefit of that, Your Honor. What do you get for that presumption under 105A if there is, as there is in this case, a favorable line of duty determination? How does that impact the willful misconduct part of it? And it just seems to me that there is a complete absence of that, either in VA regulations or in the statutory scheme. One more question, if I could, on the record here, and mostly these old documents that we have in the appendix. Judge Dyke called your attention to page 100, which has the reference to LD colon yes, which I assume is line of duty. That's the way I interpret it. Also, I wanted to see page 96 of the appendix has the three X's in the in-line of duty box. Which of those, if either or if both, is the service determination that we're supposed to be addressing and that 3.1M addresses? I'm understanding it correctly. Or are they the same part of the same document? Honestly, I can't tell from the way that they were in the claims file whether they are or they aren't part of the same document. There are several other documents. They have different dates, but both in 1971. To the extent that we have a document to which the VA has to defer, I'm trying to figure out which it is. Again, I believe that's an unanswered question in the regulatory scheme, because in this case there is a medical record that makes that determination, and then there is a medical board that makes that determination. And as a consequence, you have one that is being done, if you will, as a matter of a medical opinion, and another that's being done for administrative purposes, and there is no clarification in the regulation as to which service department finding we're supposed to be relying upon. Or can they use a service department finding that is not made by the department, but simply made by a medical individual? What was he separated for ultimately? What was the theory of the separation? Was it administrative separation? I believe because of this psychotic episode and his inability to continue to function as a soldier as a result of this psychotic breakdown. So would that have been a separation for physical disability? Yes. So he was not... Psychiatric disability. Yeah, but why wouldn't he have potentially been entitled to a military disability pension? He probably would have, except that there would have had to have been a determination which was apparently not made, at least in the part of the record that we have. And I'm not sure we have all of the medical board proceedings, but in that part of the medical board proceedings that we have, there's no indication that there was an evaluation under the VA rating schedule as to the degree of disability. Which would have had to be more than 30. More than 30, that's right. Thank you very much. Mr. Carpenter, we've consumed your time with questions. We'll give you back three minutes for rebuttal. Mr. Abelson.  In 1999 and 2000, a determination was made by two doctors at the VA that what Mr. Carpenter was asking, was claiming, was the result was caused or was in itself drug abuse. That's a fact. And what we're looking at here, we go back to 1971, when his original medical condition was discovered. He filed a claim in 77, which was turned down. And then in 1993, he filed a claim that we're talking about here today. Prior to October 31st, 1990, the standard was willful misconduct in order to deny line of duty. And he claimed, according to the regulation, filed after October 31st, 1990, which is the date of the legislation, or the enactment date, included drug abuse and alcohol abuse as not being line of duty. And as you pointed out, your honors, you have two statutes here. You have the compensation statute, which says, and it refers to line of duty, but that no compensation will be paid under the statute if the condition was caused by drug abuse, and limited to drug abuse in this case. The willful misconduct issue doesn't exist after 1990. If an individual's claim involves a condition caused by drug abuse, it is not line of duty and compensation cannot be paid. Now the regulation that we're looking at does mention that a service department's determination of line of duty is binding unless it is patently inconsistent with the laws. I believe it says, not the regulations. Administered by the VA. Suppose the regulation had said where there's been a service department determination of line of duty that that can only be overcome by clear and convincing evidence. Suppose the regulation said that explicitly, which is what Mr. Carpenter is asking us to read the regulation as saying. But say it said it absolutely explicitly. Would that be a valid regulation? Your Honor, I really don't know. I would say the regulation, first of all, doesn't say that. Second of all, we have a factual determination in this case that Mr. Carlson's condition was caused by drug abuse. Well, I understand that. But go with my hypothetical. Let's assume that the regulation said that explicitly. I know you say it doesn't. Right. And I don't think anybody's saying it does say it explicitly. But let's say it did say it explicitly. Would that be a valid regulation? I'd have to research that, Your Honor. I guess the regulation could say, I would think that the statute, if we're looking at the statutes that talk about drug abuse, the statute itself says that if a condition is caused by drug abuse, there's no line of duty. That's statutory. So if you have a factual determination by the court here that drug abuse was what caused the condition, that factual determination, the way I understand it, can't be challenged. Only the interpretation of the regulation, it's evident what Mr. Carpenter is saying, needs to be challenged here. And the interpretation of the regulation says if you have a patently inconsistent finding, which after 1990, the finding by the department was patently inconsistent with the laws administered by the agency, which was if someone's condition is drug, caused by drug abuse, it is not line of duty, number one, and as Judge Bryson pointed out, you're prohibited from paying any compensation to that individual. I'm really puzzled at this regulation. I mean, it's terribly difficult to parse, frankly, and I, well, you can explain it to me, perhaps. I'll try. Well, suppose you have a service determination that the serviceman was acting in the course of his service. He wasn't AWOL or deserted and so forth and so on. And also that the particular disability was not the product of misconduct, whether drug related or alcohol related or otherwise. That's their determination. They check the box that says in line of duty. Does this regulation say that is now binding on the VA or does it allow the VA to go back and say, well, they said it wasn't its line of duty and was not caused by misconduct or drug use, but we don't agree. What does the regulation say as to that case? What the regulation says is that the line of duty determination is binding unless it's patently inconsistent with the laws. Those are the words of it. I now apply it to this case that I just put. To my hypothetical. To your hypothetical that if, let's say they made that determination and yet the VA finds that it was patently inconsistent with the law they were administering at the time, they wouldn't be bound by it. So they're bound by a determination that this was in the line of duty because it was not the product of misconduct unless they disagree with it. Unless they, well, in this, of course, in this case. That's your position as far as I can tell. I'm thinking more after 1990 because they have a determination here that it was, if you look at what happened prior to 1990. Your position would be the same if it were an AWOL determination, that the service department made a determination that the serviceman wasn't AWOL when the event happened. And your view would be that the VA is perfectly free to reexamine that question too, right? No, Your Honor, I'm not saying that. What's the difference between AWOL and willful misconduct? Well, AWOL, if it's an absent without leave and there's a determination, if the service department made a determination of line of duty, and let's say, and the VA. They explicitly address the AWOL question. They say he wasn't AWOL. And the VA says we disagree. Can they reexamine that question? I believe they could not, but I mean, that's not the issue here. Well, I understand, but I wonder why there's not, it seems to me that under your theory, they could reexamine anything. No, not if it's, what I'm saying is if it's painfully inconsistent, the law as it stood in 19, prior to October 31st of 1990, did not have per se that drug abuse was a disqualifying incident. After 1990, it didn't. In this case, what we need to look at is that in this particular case, the individual was found to have had the condition with drug abuse, that is, because the Army made a determination of line of duty. And by the way, it appears the Army was aware of the drug abuse. And as it was pointed out, that the Army's standard for line of duty may be different than what the VA. But in this case, this case, there's no question it was drug abuse. That's not an issue. And if it's drug abuse, then the Army's determination in 1971 of line of duty is painfully inconsistent with the laws as they are administered today by the VA when the claim was filed in 1993. You cannot find line of duty with drug abuse, and you can't pay compensation when there's been drug abuse. Is your answer to Judge Bryson's question, then, that because this was a pre-1990 determination, it's subject to being reexamined, but that if the determination had been made after 1990, it wouldn't be? No. What I'm saying is, even if it was after 1990 and there was a finding by the VA of drug abuse, the finding by the Department was there was drug abuse. But they still found line of duty. I don't know the reasons for that, but they did. What I'm saying is that what the regulation says is, the Service Department's finding is binding unless it is painfully inconsistent with the laws administered by the VA. Not necessarily administered by the Department of the Army or the Department of the Air Force or whatever the Service is. The VA's law, this is strictly VA law, statutes that apply to the VA, say no line of duty determination if the condition is caused by drug abuse, no payment of compensation if the condition is caused by drug abuse. This condition was caused by drug abuse. The laws being administered by the VA at that time, when Mr. Carlson filed his claim in 1993, makes that finding by the Army, as far as the VA is concerned, painfully inconsistent with the laws that they administer. Can we go through the first two sentences of 3.1M and you explain what's going on here? Because I'm still not clear. The first sentence says, in line of duty means an injury or disease incurred or aggravated during a period of active military service. Unless such injury or disease was the result of the veteran's own willful misconduct or result of abuse of alcohol or drugs. Do I take that to mean that the finding of in line of duty incorporates a finding that there was no abuse of drugs or alcohol? As that sentence is written, after 1990 that would be correct. And that's what the VA interprets that sentence to mean. So if the finding of in line of duty is made, it incorporates the absence of willful misconduct or abuse, correct? That's why I want to make the distinction because prior... Well, let's set the 1990 aside. That's a really different issue. But suppose to take Judge Dyke's hypothetical, everything here occurred starting in 1991. The finding and the question before the VA of eligibility and whether this is in line of duty. If that is what, if what you say is, and I take it you say that's what it means, that the determination made by the service of in line of duty incorporates a finding that there's been no drug abuse or willful misconduct, correct? As far as the VA, it's a VA regulation, so it's the VA's determination. No, no, no. The determination that the service makes is, as I understand it, according to this regulation, a finding with respect to willful misconduct, correct? It incorporates willful misconduct or not. I mean, if that's not correct, tell me. And drug abuse and alcohol abuse. Again, I don't know what the standard for the Department of the Army was when they make that finding. Okay, well that raises the second sentence, and that's the critical question for me is, what does it mean then when we say a service department finding that injury, disease, or death occurred in the line of duty will be binding on the department, dot, dot, dot, unless? Unless. Well, set aside the unless for a moment. Does that mean that the finding, the service department's finding of in line of duty, is the very in line of duty that we just talked about in the first sentence, or not? I cannot say that it is, for the Army may have a different, as was pointed out earlier, the Army may have a different standard that they are applying when they're determining line of duty. But what does the VA mean when it refers to in line of duty? Are they referring to something other than the service determinations in the first sentence? I believe they are, Your Honor, because they are referring, this is implementing the statutes which talk about line of duty. The two statutes we're looking at are 105A, and it used to be 310. It's now 1110. That's what they're talking about. So you're saying, if I understand you correctly, and don't let me distort what you're saying, but if I understand you, you're saying the first sentence is essentially a paraphrase of 105A, and the second sentence says nothing more than that if the service makes whatever it wants to call a line of duty determination, that will be binding, but only with respect to that portion of 105A that deals with line of duty narrowly defined, and not including anything to do with willful misconduct. Is that the way you read it? As it says, unless it's patently inconsistent with the laws as administered by the VA, that appears to make a distinction between what the service department may find as line of duty and what the laws administered by the VA may find as line of duty. Okay. Do you agree with the way I, in my last effort, parsed the regulation? Is that the way the VA reads that regulation? I would believe it is, Your Honor, but I accept that you keep referring to willful misconduct when drug abuse by itself is enough to deny... Oh, I understand. I'm using that as a shorthand. All right. We're talking about things post-1991 for purposes of just understanding what these words mean. Well, as I said, it used to be just willful misconduct, and then Congress added the alcohol abuse and the drug abuse. Can I ask one other question, which you may be familiar with? There's a case pending, I think, before the CAVC called Stover v. Nicholson. Are you familiar with that case? No, I'm not. Because the reason I'm curious is because the—and maybe some of your associates from the department would be aware of it. This—back in last May, the court asked questions and asked for a supplemental briefing on questions that are very closely related to the questions that are before us here, and apparently there hasn't been an opinion since May on that, and I'm just sort of curious if sometime next week we're going to get an opinion from the CAVC which will relate to exactly the issues that are presented. Your Honor, I have no problem getting here to argue this case. You don't know. I'm only aware of Stover. And no one else is aware of the case. I don't know if Mr. Lee would be aware of Stover. All right. All right. Again, Your Honors, we feel that the court's decision in this case was correct and should be affirmed. Thank you, Mr. Abelson. Mr. Koppiner has three minutes. Thank you. I believe the problem here, at least as it relates to this specific case, deals with the question of the disease or injury incurred in service. And we're talking about the same disease or injury. What the VA's 1999 and 2000 examination did was to attribute another causation. The VA determined that the causation for that psychiatric injury in service was the drug use. But in service, the opposite determination was made. Elsewise, they could not have made a line-of-duty determination. And I'm not so sure about that. Well, Your Honor, it would have been entirely— well, the whole reason that it went to the board was to resolve the question of that line-of-duty determination, to decide whether or not what was incurred in service,  developed as simply a happenstance, an occurrence during service, or whether it was produced by the use of drugs. Let me—I just want to ask you one other question before your time expires. Let's assume that we conclude that this regulation is ambiguous. And as I understand the board, the board has interpreted the regulation as imposing a preponderance of the evidence standard, or being consistent with a preponderance of the evidence standard, correct? I'm not sure I would read the board's decision that way, but I can understand how you might read it that way. I believe the reference— Well, let's assume for the moment that it did read it that way, which would be on page 30 of the appendix. Do we owe deference to the board's interpretation of the regulation under that Supreme Court line of cases about Cleveland baseball, where you defer to an agency's interpretation of its own ambiguous regulation? I would have to say no, simply because there has been no prior indication on the part of the VA that there was any ambiguity here. That becomes a sort of post-hoc rationalization that you should give them deference to that interpretation because it was ambiguous. It would seem to me that at a minimum it would need to be remanded for such a determination. Are you agreeing that the board can speak for the VA then in interpreting the regulation? I'm not comfortable, frankly, in going that far. I believe that their role is to be the adjudicator and not to be the interpreter, and that of a statute of regulation, and since the board has authority to seek a general counsel's opinion that would bind them, that that would be the way to get the agency's deference to such an interpretation or conclusion that their own regulation was ambiguous, and then ask their general counsel to read that, to parse it out the way that Judge Bryson just did, and determine whether they now conclude that it's ambiguous. But quite frankly, if they concluded that it was ambiguous, then the remedy should not be to simply offer this interpretation in a board decision, but for the benefit of every other veteran to withdraw the regulation and publish a non-ambiguous regulation. Are the board determinations precedential? No. Has this question of deference to the board's interpretation ever come up before? Not that I'm aware of. Okay. Except by the extension of the Stanford case that you referred to. Okay. I think that, well, yes, that probably covers it. Thank you, Your Honor. Thank you, Mr. Coffin. The case will be taken under advisement. All rise. The Honorable Clause of the Jurisdiction, David Day.